State v. German.

THE STATE OF MISSOURI, Defendant in Error *vs.* WILLIAM GERMAN, Plaintiff in Error.

1. *Criminal law—Corpus delicti—Confession, without other proof of.—* A conviction of murder is not warranted when there is no other proof of the *corpus delicti,* but the uncorroborated extra-judicial confession of the accused.

## Error to Jasper Circuit Court.

*James F. Hardin & D. A. Harrison,* for Plaintiff in Error.

I. The court erred in admitting any evidence. There was no proof offered tending to prove that Canaday was dead, and without proof of the death, there could be no conviction. (Whart. Am. Crim. Law, § 745–6; State vs. Robinson, 12 Mo., 592; State vs. Scott, 39 Mo., 429; 1 Chit. Crim. Law, 563; 3 *Ibid,* 736; 1 Russ. Crimes, 567–8; 1 Greenl. Ev., § 217.) The confessions could not be used to prove the *corpus delicti.* See above cases.

II. The court erred in admitting the evidence of confessions testified to by the witness, C. W. Mallory. (1 Greenl. Ev., §§ 213, 263; People vs. Ward, 15 Wend., 231; State vs. Hector, 2 Mo., 166; 1 Phil. Ev., 544, and cases there cited; Archibald, Crim. Pl., 125–6; Roscoe Crim. Ev., 34; Joy Confessions, 38 Law Lib., 59–61; 7 Iredell, [N. C.] 239; 2 Hump., [Tenn.] 37; State vs. Scott, 39 Mo., 424; State vs. Robinson, 12 Mo., 592; State vs. Brockman, 46 Mo., 566.)

*H. Clay Ewing, Attorney General,* for Defendant in Error.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted in the Circuit Court for murder in the first degree, in killing one Canaday. On the first trial he was convicted of the offense, with which he stood charged, but on his motion that conviction was set aside, and being again put upon his trial he was found guilty of murder in the second degree.

The testimony as preserved in the bill of exceptions, shows in brief, that the defendant and Canaday, lived together, Can-

aday, having married defendant's wife's mother; that on the day on which Canaday, disappeared, the two started together in a wagon, to a cornfield where they were working, about two miles distant. In the evening when defendant returned he was alone, and when inquired of concerning Canaday, he said that a couple of men came along where they were at work, and gave the old man a drink of whisky, and he went off with them. There was nothing unusual about defendant's actions and appearance, and he uniformly told the same story in reference to Canaday's absence.

After the lapse of several months, in the woods between the house where defendant lived, and the field where he went to work when he was accompanied by Canaday, a pair of old boots, and some other clothing were found, and also some bones. An attempt was made to identify the boots and clothing as those belonging to, and worn by Canaday, but the evidence only showed that they were similar, no witness swearing to a positive identification. Nothing was done towards arresting the defendant or fastening the alleged crime upon him, and in about eight months after Canaday's disappearance, he changed his residence, going into Kansas, forty miles distant from where he previously resided. A warrant was afterwards sued out against him, in Jasper county, charging him with the murder of Canaday, and an officer went and arrested him, in his own house. He accompanied the officer back to Jasper county, without any kind of resistance, and on the way, he was told by one of them, that it would be better for him, to confess.

After he was placed in prison, the officer who arrested him and was deputy sheriff, had several conversations with him. The officer says that those conversations were confidential; and upon another occasion he says that he had the prisoner completely "broke." At one of these conversations, and one only, the prisoner made the confession to him, which was given in evidence. From the officer's statment it seems that the prisoner labored under the impression, that there were certain witnesses who were going to swear that he committed the crime. He evidently believed that they would convict him, and he

told the officer, that he had made up his mind not to put the county to any more expense, and that he would plead guilty, and that he killed Canaday. There was a mere admission of killing; no time, place, or circumstances were given. He wanted the officer to see the judge and use his influence, to have his punishment as light as possible, and then to get up a petition to have him pardoned. The officer promised him that he would get up the desired petition, and told him that he thought he could be got out of the penitentiary, after he had been there a reasonable time. At the time this confidential interview was had, it appears that this same officer was engaged with others in procuring counsel to assist in prosecuting the accused to a conviction, for the purpose of obtaining a reward, that had been offered. It appears abundantly clear that, when the prisoner proposed to plead guilty and confess the crime, that he supposed, that he could plead guilty of murder in the second degree, and that no higher punishment than imprisonment in the penitentiary could be inflicted upon him under the indictment. But when he afterwards saw the indictment and became aware that it was for murder in the first degree, and that a conviction thereon might lead to an execution, he changed his mind, and declared that he would not plead guilty, but would stand his trial. Such is substantially the evidence as shown by the record. It will be observed that there was no evidence whatever, that Canaday was murdered, except the confession of the defendant, and that was made under circumstances which rendered it inconclusive and questionable indeed, whether it should have been admitted at all.

Confessions are divided into two classes, namely, judicial and extra-judicial. Judicial confessions, are those which are made before the magistrate or in court, in due course of legal proceedings, and it is essential that they be made of the free will of the party, and with full and perfect knowledge of the nature and consequences of the confession. Of this kind are the preliminary examinations, taken in writing by the magistrate, pursuant to statutes, and the plea of guilty made in open court to an indictment. Either of these is sufficient to

found a conviction upon, even if it be followed by sentence of death, they being deliberately made, with the advice of counsel, and under the protecting caution and oversight of the judge. Extra-judicial confessions, are those which are made by the party elsewhere than before a magistrate, or in court, this term embracing not only explicit and express confessions of crime, but all those admissions of the accused from which guilt may be implied. (1 Greenl. Ev., § 316.)

Whether extra-judicial confessions, uncorroborated by any other proof of the *corpus delicti*, are of themselves sufficient to found a conviction of the prisoner upon, has not only been doubted, but, in the best considered cases, denied. "In the United States," says Greenleaf, "the prisoner's confession when the *corpus delicti* is not otherwise proved, has been held insufficient for his conviction; and this opinion certainly best accords with the humanity of the criminal code, and with the great degree of caution applied, in receiving and weighing the evidence of confessions in other cases; and it seems countenanced by approved writers on this branch of the law." (*Ibid*, § 217.) Wharton, in his treatise on Criminal Law, lays down the doctrine in equally emphatic terms, and says that proof of the *corpus delicti*, by clear and satisfactory evidence must always precede a conviction. He approvingly quotes the language of Lord Hale, where that great judge says: "I would never convict any person for stealing the goods of a person unknown, merely because he would not give an account how he came by them, unless there were due proof made that a felony had been committed. I would never convict any person of murder or manslaughter, unless the fact were proved to be done, or at least the body found dead." (1 Whart. Crim., Law, § 745-46.) A writer of standard excellence has said: It may be doubted whether justice and policy ever sanction a conviction, where there is no other proof of the *corpus delicti*, than the uncorroborated confession of the party. (Wills Circumst. Ev., § 6.) In murder trials, the rule laid down by Lord Hale, has been generally followed, namely, that the fact of death should be shown, either by witnesses who were

34—VOL. LIV.

present, when the murderous act was done, or by proof of the body having been seen dead ; or if found in a state of decomposition, or reduced to a skeleton, that it be identified by tests of the most clear and cogent character. These authorities have frequently received the approbation of this court. In Robinson vs. The State, (12 Mo., 592.) Judge Ryland, after examining many of the cases, laid it down as the settled rule, that the confession of a defendant, not made in open court, or on an examination before a committing court, but to an individual, uncorroborated by circumstances, and without proof *aliunde* that a crime has been committed, would not justify conviction.   In the case of The State vs. Scott, (39 Mo., 424.) which was an indictment for robbery, where the evidence showed that the prisoner was riding in company with an old man, and he declared that he intended, to get into a "fuss" with the old man, and take his horse from him, and afterwards he was seen riding the horse, and he said that he had got into a "fuss" with the old man, and took his horse, this was held to be insufficient evidence to warrant a conviction, because there was no corroborative testimony that a crime had been committed.   This doctrine was also recognized in the case of the State vs. Lamb, (28 Mo., 218,) where a conviction for murder was sustained, upon a judicial confession by the prisoner, which constituted the only actual proof of the commission of the crime.   But there was a chain of corroborative circumstances, from which the evidence of guilt was irresistible.   In the case at bar, there is an utter failure to prove the *corpus delicti*.

All the circumstances, proved by the State outside of the confession, may well exist and still be entirely consistent with the fact, that Canaday was never murdered, and that he is still alive ; that a pair of coarse boots were found similar to his, is really no evidence.   All boots bought of the store as his were, will look alike when worn ; so with the clothes. The belt which it was first thought was his, upon a close examination proved not to be his. Mrs. Davis, the witness with whom he had lived when he was working on the railroad, and who had mended it for him, when she inspected it, said

that his belt was lined by her with a piece from an old calico dress, and that the belt produced and found, was lined with bed ticking, and was not his. The confession was made out of court, and lacks the necessary corroboration.

It further appears that it was made under a misapprehension, and that the prisoner did not have a full knowledge of all the facts, and of the consequences that would result therefrom. It is undeniable that the officer, to whom the confession was made, was in the prisoner's confidence, and exerted a great influence over him, and it may be well doubted whether it was properly admitted in evidence.

I think that the demurrer tendered to the evidence by the defendant's counsel, should have been sustained, and that the judgment should be reversed, and the cause remanded.

The other judges concur.