The State v. William Walker.

## The State v. William Walker, *Appellant.*

1. **Criminal Law**: CO-DEFENDANT: WITNESS. Persons jointly indicted with another, and who have been acquitted, or the indictment against them has been *nollied*, are competent witnesses against their former co-defendant, notwithstanding a second joint indictment is pending against all the parties for another crime, and the evidence to support the two prosecutions is, in general, the same.

2. ——: CONSPIRACY: EVIDENCE. Where a crime is perpetrated by several persons it is necessary to show a combination or conspiracy in order to make the acts and declarations of one, the acts and declarations of all.

3. ——: ——: ——: PRACTICE. It is for the court, in the first place, to say whether there is any evidence of a conspiracy, and for the jury to determine whether there was one, and its objects.

4. ——: ——: ——: ——. It is a matter resting largely in the discretion of the trial court as to when proof of a conspiracy shall be offered. The declarations and acts of one, made and done in the absence of the others, may be proved before the conspiracy is proved, provided the proof of conspiracy be afterwards made.

5. ——: ——: ——: ——. A conspiracy need not be shown by direct and positive evidence. It may be inferred from circumstances.

6. ——: ——: ——. Where a conspiracy is established, the act or declaration of one, in the prosecution of the common plot or undertaking, is the act or declaration of all.

7. ——: ——: ——. When persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminates in a criminal result, though not the particular result meant, all are liable.

8. ——: ——: ——. Every person entering into a conspiracy or common design, already formed, is deemed in law a party to all acts done by any of the other parties, before or afterwards, in the furtherance of the common design.

9. ——: EVIDENCE. Evidence that after the commission of the crime, with which defendant was charged, his father, in defendant's presence, gave instructions to the other participants in the crime, as to what they were to testify to is admissible.

| 98 | 95 |
|----|-----|
| 98 | 121 |
| 98 | 124 |
| 98 | 130 |
| 98 | 135 |
| 98 | 136 |
| 98 | 95 |
| 100 | 623 |
| 100 | 672 |
| 98 | 95 |
| 41a | 476 |
| 41a | 478 |
| 98 | 95 |
| 106 | 120 |
| 98 | 95 |
| 115 | 388 |
| 115 | 461 |
| 98 | 95 |
| 118 | 235 |
| 98 | 95 |
| 121 | 150 |
| 98 | 95 |
| 129 | 105 |
| 98 | 95 |
| 137 | 104 |
| 98 | 95 |
| 143 | 172 |
| 98 | 95 |
| 147 | 554 |
| 98 | 95 |
| 164 | 565 |
| 98 | 95 |
| 92a² | ²464 |
| 98 | 95 |
| 172 | ²344 |
| e175 | ⁴591 |
| 98 | 95 |
| 177 | ²119 |
| 177 | ³131 |
| 177 | ⁴166 |

10. **Practice in Supreme Court.** A general objection to evidence does not entitle the party making it to be heard in the supreme court.

11. **Criminal Practice:** INSTRUCTION. The use of the word "real" in an instruction upon reasonable doubt is not a reversible error.

12. ——— : ——— : MURDER. It is not necessary to use the word "feloniously" in defining murder in the first degree.

13. ——— : ——— : ———. The deliberation and premeditation necessary to constitute murder in the first degree may be inferred from the circumstances connected with the killing.

14. ——— : ——— : PROVOCATION. Where there is no evidence in a case tending to show any provocation which will exclude deliberation, the court commits no error in failing to define what is a just or lawful provocation.

15. ——— : ——— : FLIGHT. An instruction which tells the jury they *will* consider the defendant's flight is not erroneous; especially where the jury are told in another instruction that they are only to consider it as a circumstance in connection with the evidence.

16. ——— : ——— : ———. Where there is evidence explaining the flight and tending to show that it was not from a consciousness of guilt, the jury should be instructed that if they find such to be the case, then the flight raises no presumption of guilt. Where the flight is not explained no such instruction should be given.

17. ——— : ——— : ACCOMPLICE. An instruction which tells the jury that, in considering the testimony of accomplices against the defendant, they should use great caution and scrutiny, that such testimony would not be sufficient to warrant a conviction unless corroborated by other witnesses as to facts and circumstances tending to prove the defendant guilty, and especially corroborated by other witnesses as to the identity of the accused as the person against whom such accomplices have testified, is correct.

18. **Criminal Law:** AIDER AND ABETTOR. One who watches for his companions in order to prevent surprise, or remains at a convenient distance in order to favor their escape, if necessary, or is in such a situation to be able readily to come to their assistance, the knowledge of which was calculated to give additional confidence to his companions, is, in contemplation of law, an aider and abettor.

19. **Criminal Practice:** CONFESSION : CORPUS DELICTI. The naked confession of a defendant will not justify or support a conviction; the *corpus delicti* must be proved by other evidence.

The State v. William Walker.

20. ———— : ———— : ————. Where the *corpus delicti* is fully and completely established by evidence outside of the confessions, it is not error to refuse to instruct that it devolves upon the state to show by extraneous evidence that the alleged crime had been committed by some one.

21. ———— : EVIDENCE : CREDIBILITY OF WITNESS. The interest of a witness in securing the arrest of a defendant, and the methods used by him, may be considered by the jury in determining the credit to be given to his evidence.

22. ———— : REMARKS OF PROSECUTING ATTORNEY. Where a defendant testified as to what were not his purposes in being at the scene of the crime, it was competent to cross-examine him as to what his purposes were ; and having opened the matter up by his own evidence, it became the subject of observation to the jury, both as to what he said and as to what he failed to disclose on the particular subject.

*Appeal from Christian Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Boyd & Delaney* and *Travers & Payne* for appellant.

(1) Witnesses Graves and Newton were jointly indicted with defendant for the same offense and were therefore incompetent. 1 Greenl. Ev., sec. 363–379 ; *State v. Underwood,* 57 Mo. 40 ; *State v. Clump,* 16 Mo. 385 ; *State v. Chyo Chiagk,* 92 Mo. 395 ; *State v. Looney,* 82 Mo. 82 ; *State v. Roberts,* 15 Mo. 29 ; *State v. Hunt,* 91 Mo. 491. (2) The court erred in permitting the state to show that the defendant, William Walker, was a member of the organization known as Bald Knobbers. Such testimony would only become material and relevant after the state had introduced evidence tending to show that the organization known as Bald Knobbers was an organization formed for the purpose of (*a*) killing Edens or Greene or (*b*) to kill generally, or (*c*) to do

such acts as reasonably included within their scope the taking of human life. *Spies v. People*, 122 Ill. 1 ; *Hall v. State*, 3 Lea. (Tenn.) 561 ; *Shaffner v. Com.*, 22 P. F. Smith ( Pa.) 60. (3) The evidence tending to show that after the killing of the said Greene and Edens, one David Walker, in the presence of the defendant, told parties there assembled what they would swear to in the event of an arrest was incompetent because (*a*) the conspiracy, if any was formed to kill Greene or Edens was at an end, and, therefore, acts or declarations of others, even if defendant was a party to said conspiracy, could not be binding on the defendant. *State v. Ross*, 29 Mo. 33 ; *State v. Beaucleigh*, 92 Mo. 490. (*b*) The testimony offered was not a part of the *res gestae*. *State v. Rider*, 90 Mo. 54 ; *State v. Christian*, 66 Mo. 138. (4) Instruction number 13 given on the part of the state is erroneous because it in effect informs the jury that what the defendant said against himself, if anything, is conclusively presumed to be true. *State v. Carlisle*, 57 Mo. 102 ; *State v. Hill*, 65 Mo. 84. (5) Instruction number 16 given on the part of the state is erroneous in that it says the jury " will " consider flight as evidence of guilt instead of " may " or " should " ( *State v. Griffin*, 87 Mo. 608 ); it does not take into consideration nor call the attention of the jury to the other facts in evidence which qualify or explain the flight, and which tend to show that the flight was for some purpose other that to avoid arrest and conviction. *State v. King*, 78 Mo. 555 ; *State v. Mallon*, 75 Mo. 356. (6) Instruction number 27 given on the part of the state is erroneous in this : It does not clearly state that the testimony of one accomplice does not corroborate that of another. *State v. Chyo Chiagk*, 92 Mo. 395. (7) Defendant's first refused instructions should have been given. The *corpus delicti* is not established without evidence *aliunde* tending to prove the same. Such proof consisted in (*a*) the death of Charles Greene as a result of a criminal act ;

and (*b*) defendant's agency in the production of the act. *State v. Dickson*, 78 Mo. 438 ; *State v. Brooks*, 92 Mo. 608 ; Wharton Crim. Ev., sec. 325, 633 ; 1 Bish. Cr. Proc., ( 3 Ed.) secs. 1054, 1060, a nd cases cited ; *Pitts v. State*, 43 Miss. 482 ; *Com. v. Johnson*, 29 Gratt. 811.

*B. G. Boone*, Attorney General, for the State.

(1) Evidence is always admissible, for the prosecution of preparations made by a defendant or defendants, to commit a crime. Whart., Cr. Ev., ( 9 Ed.) sec. 753 ; Bur. Cir. Ev., pp. 343–365 ; *Rex v. Hunt*, 3 Barn. & Ald. 356 ; *Campbell v. Comm.*, 84 Pa. St. 187, (196.) (2) Persons jointly indicted with one on trial may testify for the state if the prosecution is dismissed as to them before the defendant has gone into his defense and before the witnesses are put on the stand. R. S. 1879, sec. 1917 ; *State v. Martin*, 74 Mo. 547 ; *State v. Chyo Chiagk*, 92 Mo. 395. The state's tenth instruction to the effect, that if defendant was at, in or near, the house of Edens so as to give assistance to or ready to come to the aid of the others in the furtherance of a common design to commit murder he is guilty as charged, no matter whether he fired the fatal shot or not, or whether the common design was formed before they arrived at Edens' house or at the house just before the killing, is correct. *U. S. v. Kane*, 23 Fed. Rep. 748 ; *State v. McCahill*, 33 N. W. Rep. 599 ; *Williams v. State*, 1 South. Rep. 179 ; *Kirby v. State*, 5 S. W. Rep. 165. (4) The state's eleventh instruction to the effect that if the defendant and the others indicted with him, were engaged in a common design, formed before or after reaching Edens', and in pursuance of such common design they, or either of them, proceeded to assault and kill Edens, and during the assault and killing of Edens they or either of them shot and killed Greene, then defendant is guilty as charged, although he and such others did not bring on the assault to kill Greene and had no common design to kill him, is correct. *State v.*

*Payton,* 90 Mo. 220; *State v. Gilmore,* 95 Mo. 554; *State v. Smith* 2 Strob. (S. C.) 77; *Com. v. Webster,* 59 Mass. 306; *People v. Keefer,* 18 Cal. 636. (5) The state's twelfth instruction to the effect that if defendant and those with him were engaged in a common design, defendant is responsible for the death of Greene, whether he (defendant) killed him with his own hand or not is correct. All participating in an illegal act with a common design are equally guilty. 1 Whar. Cr. L., (8 Ed.) sec. 152; *Reg v. Lee,* 4 Fost. and F. 63; *Reg v. Caton,* 12 Cox Cr. C. 624; *Spies v. People,* 122 Ill. 1; *U. S. v. Kane,* 23 Fed. Rep. 748; *Nudd v. Burrows,* 91 U. S. 426; *People v. Powell,* 63 N. Y. 88. (6) The state's sixteenth instruction, to the effect that flight raises the presumption of guilt and should be considerd with reference to the other evidence, is correct. *State v. Jackson,* 95 Mo. 623. (7) The state's twenty-seventh instruction in regard to the weight to be attached to the testimony of accomplices is correct. 1 Greenl. Ev. (14 Ed.) sec. 380; *State v. Jones,* 64 Mo. 391; *State v. Reavis,* 71 Mo. 419; *United States v. Hinz,* 35 Fed. Rep. 272.

BLACK, J.—William Walker, the defendant, and fifteen other persons, were indicted in the Christian county circuit court for killing Charles Greene on the night of the eleventh of March, 1887. The cause as to this defendant came to trial, after two continuances, and he was found guilty of murder in the first degree and sentenced to suffer the death penalty.

There was an organization in that county known as Bald Knobbers, which had its signs, grips and passwords. The members were admitted by taking a pledge to keep the secrets of the order and to protect each other, under the penalty of death. On the night of the homicide, the defendant and his father, the latter, chief, and the former, assistant chief, and other members of the band, to the number of twenty or thirty met at an out-of-the-way place, called the old smelter, which was

in a ravine and a half mile or more from any habitation. The greater portion of the men were armed and masked, and it appears that switches had been gathered and were at hand for the purpose of whipping persons who were not in good standing with this organization. The defendant had a shot-gun and pistol and wore a mask. They remained at this place two or three hours, consulting and initiating members, and then, with the exception of three or four persons, went in a northeast direction one or two miles, when they came to a halt, until the horsemen and those on foot formed a group. They then separated because some one stated that the "Slickers" might fire into them. Most of the men ran into a small inclosure three or four hundred yards off, to a house owned and evidently supposed to be occupied by William Edens. They broke open the door but found no one in the house. The crowd then traveled in great haste a mile or more to the house of James Edens, which was a one-room house, with one window only and two doors, and about sixteen by eighteen feet in size. There were in the house James Edens, his son, William Edens, and his son-in-law, Charles Greene, their wives and two small children.

The evidence of James Edens and the three women is, in effect, that the inmates of the house were asleep; that these men on the outside aroused them by cursing and using such language as "Get out of there or we will kill you;" that the assailants at the same time broke the window glass with their guns and fired three shots into the house through the broken window; that others. of them broke down the doors, entered the house, fired a dozen shots and fled, having killed William Edens and Greene and wounded James Edens. It seems some of the inmates of the house got their pistols and shot as best they could, wounding the defendant. At the time defendant was wounded, he dropped his gun and left it in the house.

1.   Three of the witnesses for the state, namely, William Newton, Charles Graves and Gilbert Applegate, were jointly indicted with defendant in this case. Applegate had been tried and acquitted, and the state entered a *nolle prosequi* as to the others that it might use them as witnesses.   It was admitted that these witnesses and defendants still stood jointly indicted in another case for killing William Edens, and for this reason, defendant objected to these witnesses.

The objection is placed on the ground of joint interest in the prosecution.   That is a different indictment from this, and an indictment for a different offense, though the general facts of the two cases are the same. A partner in a crime is not an incompetent witness, simply because of the turpitude of his conduct.   The admission of accomplices, as witnesses for the state, is justified by the necessities of the case, it being often impossible to bring the principal to justice without them. 1 Greenl. Ev., ( 13 Ed. ) sec. 379.   As there are, in the absence of legislation on the subject, some qualifications upon the right of persons who are parties to the record to testify in civil cases, so there are qualifications of a like character in criminal cases.   Wherefore, says Bishop, the law is, that "a joint defendant cannot be a witness for or against the others, even on a separate trial, till the case is disposed of as to him by a conviction or acquittal, or by a *nolle prosequi*."   1 Bish. Crim. Proc., ( 3 Ed. ) sec. 1166.   In regard to defendants in criminal cases, if the state would call one of them as a witness against the others in the same indictment, this can be done only by discharging him from the record. 1 Greenl. Ev., sec. 36.   It is plain to be seen that the disqualifying interest, if such it may be called, must be in the event of the suit, and not simply in the question to be decided.   Hence Mr. Bishop states the rule on the other hand in these words: "If the accomplice is not indicted, he is, of course, competent ; so he is if indicted

separately from the rest, though no disposition of his case has been made." 1 Bish. Crim. Proc., ( 3 Ed. ) sec. 1167.

Our statute provides : " When two or more persons shall be jointly indicted or prosecuted, the court may, at any time before the defendants have gone into their defense, direct any defendant to be discharged, that he may be a witness for the state." Revised Statutes, section 1917. We have held in construing this statute, that a defendant jointly indicted with others, but not put upon his trial, cannot testify on behalf of the state ; the mere severance for the purpose of a trial does not make him a competent witness for the state. *State v. Chyo Chiagk*, 92 Mo. 395. But this ruling has nothing to do with one not jointly indicted ; nor does the statute disqualify persons who were previously competent witnesses. It follows that these witnesses, not being parties to this record, the suit having been dismissed as to two of them, and the other having been acquitted, are competent witnesses for the state. They have no such interest by reason of the fact that the other indictment is still pending against them and this defendant, as will disqualify them from testifying on behalf of the state, though the evidence to support the two prosecutions is, in general, the same.

2. Objection is made to the evidence of the state showing that defendant was a member of the band of Bald Knobbers, and that some of the band made a raid on the house of William Edens. It is argued that such evidence would be relevant only after the state had offered evidence showing that the band was an organization formed for the purpose of killing Greene and Edens, or to kill generally, or to do some act reasonably including the taking of human life. Where a crime is perpetrated by several persons, it is necessary to show a combination or conspiracy in order to make the acts and declarations of one the acts and declarations of all.

It is for the court, in the first place, to say whether there is any evidence of a conspiracy, and for the jury to determine whether there was one, and its objects. Again, it is a matter resting largely in the discretion of the trial court as to when that proof shall be offered. The prosecution may prove the declarations and acts of one, made and done in the absence of the others, before proving the conspiracy, provided the proof is afterwards made. *State v. Ross*, 29 Mo. 32 ; *State v. Daubert*, 42 Mo. 239 ; Whart. Crim. Ev., ( 8 Ed.) sec. 698*a*. It is therefore not material at what time the proof of a conspiracy was made. A conspiracy, it is to be remembered, can seldom be shown by direct and positive evidence. It need not be so shown. It may be inferred from the circumstances. 2 Whart. Crim. Law, ( 9 Ed.) sec. 1398.

Indeed, the conspiracy and the object thereof may be deduced from the attending circumstances connected with the transaction in question. Thus in the case of *McManus v. Lee*, 43 Mo. 206, which was an action of trespass, the evidence showed that a band of men, to the number of three or four hundred, went into a town and drove the citizens into a court house. The defendants were with them, armed and acted like the rest. Some of the band took the plaintiff's horse and saddle, but there was no direct proof that the defendants, or either of them, took the property or approved the taking. It was objected that there was no evidence of a conspiracy, but this court held that there was. Even where the original coming together is lawful, the after conduct of the parties may satisfy the jury that all were guilty of what was done. 1 Bishop Crim. Law, sec. 634. There can be no doubt but there was abundant evidence in this case of a combination. The law is well settled, too, that where a conspiracy is established, the act or declaration of one, in the prosecution of the common plot, or undertaking, is the act or declaration

of all. Whart. Crim. Ev., sec. 698 ; *McManus v. Lee*, *supra*.

Taking the foregoing to be correct principles of law, the particular point of the objection would seem to be, that the evidence fails to show that this act of homicide was within the common enterprise. Mr. Bishop says : " Where therefore persons combine to do an unlawful thing, if the act of one, proceeding according to the common plan, terminates in a criminal result, though not the particular result meant, all are liable." 1 Bish. Crim. Law, ( 6 Ed.) sec. 636. Now some of the evidence, taken by itself, would tend to show that when these persons left the old smelter, it had been concluded to do no violence to any one. One witness says he did not hear any propositions at the old smelter, except to go down on Swan creek and pour out some whiskey belonging to Roberts. Another says that the proposition was not accepted. One witness says there were propositions made to whip designated persons and he thinks William Edens was one of them. Johns says some proposed to break up and go home, some proposed to go up and " tend to the Slickers," and some objected, and then the crowd went off in the direction of Edens' house. The general scheme of the band embraced within it the destruction of property and maltreatment of persons, and it is a fair inference from the evidence that they left for the very purpose of visiting William Edens. They were armed, masked, and in every way conducted themselves as evil-disposed persons, bent on mischief and the perpetration of crime. The evidence certainly tends to show that the persons who killed Greene and Edens were then acting in accordance with the purposes of this band, and that is sufficient to admit the acts and declarations of all, both at the smelter, and on the route to the place of the homicide. Even if this defendant had only entered into the conspiracy after it had proceeded in the raid which resulted in the death of Greene

and Edens, he would be deemed in law a party to all acts done by any one of the conspirators, before or afterwards, in furtherance of the common design. 3 Greenl. Ev., sec. 93.

3.    Graves states that he and three others came up with defendant and six others after they had all left the scene of the homicide, and when they were about a mile and a half away. David Walker, the father of defendant, called a halt, and said he would take defendant, who had received a shot through the right leg, to Douglas county; and that David Walker then gave orders, which the witness related over the objection of defendant. He says : " I don't remember what others, except Inman, McGuire, Applegate and myself were to testify to; we were to go home and if there was any arrest made, we were to swear that we were at Inman's playing cards until eleven o'clock ; defendant was right there present." We think this evidence was competent. It is plain to be seen that all the parties received their instructions what to do in order to prevent a disclosure of the crime. If it must be said the conspiracy had ended, still the evidence is that of statements made in defendant's presence, and to which it is plain to be seen he was a party. Admissions may be implied from acquiescence of the party to what is said or done in his hearing. 1 Greenl. Ev., sec. 196 ; Whart. Crim. Ev., sec. 678 ; *State v. Miller*, 49 Mo. 505. But we think this evidence even shows that defendant was a party to the scheme to cover up the crime.

4.    Numerous other objections are made to the admission of evidence relating to minor matters. On an examination of the record it appears the objections were general only, and hence do not entitle the party making them to be heard in this court. 94 Mo. 292 ; 91 Mo. 144 ; 76 Mo. 436.

5.    This brings us to the instructions. The use of the word *real*, in the instruction upon reasonable doubt,

is not reversible error. 90 Mo. 220 ; 91 Mo. 506 ; 95 Mo. 156.

6. As to the third instruction, it is sufficient to say that it was not necessary to use the word "feloniously" in defining murder in the first degree. It was not used in that connection in this case. It is employed to classify offenses, but it is not a distinct element of a crime. *State v. Snell*, 78 Mo. 241. The deliberation and premeditation necessary to constitute murder in the first degree may be inferred from the circumstances connected with the killing, and hence there was no error in so instructing the jury. *State v. Grant*, 76 Mo. 247.

7. The sixth instruction, defining deliberation, concludes with these words : " And not under the influence of a violent passion suddenly aroused, and the passion here referred to is that and that only which is produced by what the law recognizes as a just cause of provocation or a lawful provocation." It is, of course, the duty of the court to define what is a just or lawful provocation, but there is no evidence, whatever, in this case tending to show any provocation which will exclude deliberation, and hence the instruction could have worked no harm to defendant, and does not contain reversible error. *State v. McGinnis*, 76 Mo. 326. Defendant, it is true, in testifying in his own behalf, says he was standing in the door when shot, but that he had no knowledge of any intention to kill any person ; that he did not go there intending to kill any one, or to aid others in killing ; that he took no part in the killing of Green and Edens, and that he did not attempt to shoot any person. We do not see that this evidence has any tendency to reduce the crime to murder in the second degree, or to manslaughter. Its tendency is to show that he was not a party to the conspiracy or killing.

8. The thirteenth instruction, it is argued, informs the jury that what defendant said against himself, after the shooting, is conclusively presumed to be true. We do not understand it to assert such a proposition. It need not be set out here, for it is the same as the twelfth instruction approved in the case of *State v. Peak*, 85 Mo. 192. Like instructions have been approved time and again. *State v. Hays*, 23 Mo. 287; *State v. Curtis*, 70 Mo. 594; *State v. Talbott*, 73 Mo. 347.

9. The sixteenth tells the jury that flight raises a presumption of guilt; and if, after Greene was killed, defendant fled from his home to Arkansas, or another part of the state, "for the purpose of avoiding arrest, trial or conviction for the killing of Greene, then you will consider his flight in connection with the other evidence in arriving at your verdict in the case." Defendant objected to this instruction on the ground that it is too strong in this, that it says you *will* consider his flight, etc. Under the facts hypothetically stated, it was certainly the duty of the jury to take into consideration the flight in connection with the other evidence, and this is all the jury are told to do. No intimation is given as to what weight they shall give to the circumstances of flight to avoid arrest or trial. An instruction which told the jury that they *should* take such fact into consideration, in connection with the other facts in evidence, was approved in *State v. Griffin*, 87 Mo. 613. There is no merit in this objection, and especially in view of the fact that the court, by the twenty-fifth instruction, told the jury that the presumption was not conclusive, and alone would not warrant a conviction; that it was simply a circumstance to be considered in connection with the other evidence. Where there is evidence explaining the flight and tending to show that it was not from a consciousness of guilt, further instructions should be given. *State v. King*, 78 Mo. 555. If the jury should find that the defendant did not leave the country for the purpose of avoiding

arrest or trial, then the leaving raises no presumption of guilt, and the jury should be so directed. But we conclude there was no error in failing to give such further instruction in this case, because there is no evidence tending to explain the flight. It is true the father said he would take defendant to Douglas county, but that was said under the circumstance before stated when Graves and others were directed what to swear to, and that evidence tends to show the defendant's leaving the country was for the express purpose of avoiding detection and arrest.

10. The twenty-seventh instruction is in these words: "The court instructs the jury that in considering the testimony of accomplices against the defendant, you should consider and examine it with great caution and scrutiny, and the testimony of such witnesses should not be sufficient to warrant a conviction in a case of murder unless the same is corroborated by other witnesses, as to facts and circumstances tending to prove the defendant guilty, and especially corroborated by other witnesses as to the identity of the accused as the person against whom such accomplices have testified." This instruction accords with what has been said by this court on the same subject. *State v. Jones*, 64 Mo. 391; *State v. Reavis*, 71 Mo. 420; *State v. Chyo Chiagk*, 92 Mo. p. 413. The instruction in the last case was disapproved, the court stating: "It fails to tell the jury that in order to the corroboration of the testimony of an accomplice, such corroboration should go so far as to identify the person of the prisoner against whom the accomplice speaks." The present instruction is not, as is contended, subject to that objection. The object of the rule is to guard against the danger that the accomplice may relate the circumstances truly and yet attribute a share in the transaction to an innocent person. This instruction directs the attention of the jury especially to this matter.

11.   One theory of the case on the part of the state, was that defendant did not himself shoot Green, but that one or more of seven named persons did, and that defendant was present, aiding and abetting.   Wharton, in describing and defining an aider and abettor, says : "If he watched for his companions in order to prevent surprise, or remained at a convenient distance in order to favor their escape, if necessary, or was in such a situation as to be able readily to come to their assistance, the knowledge of which was calculated to give additional confidence to his companions, in contemplation of law, he was aiding and abetting." Whart. Crim. Law, ( 9 Ed.) sec. 211.   Tested by this rule, the fourth, tenth and twentieth instructions, taken together, as they must be, present the law on this point very favorably for the defendant.

12.   The defendant's first refused instruction declares that his admissions "should be received by you with great caution, and are not of themselves sufficient to warrant you in convicting the defendant, unless corroborated by other facts, and circumstances in the case."   It is to be observed that the court gave an instruction to the effect, that the jury should weigh the evidence concerning the defendant's conversations and declarations with caution, and take into consideration the liability of the witnesses to misunderstand the words used, and of misquoting defendant's language. It is therefore the latter part only of this instruction that calls for consideration.   It may be stated here that the instructions, as a whole, place the case before the jury on these theories.   First, that defendant with his own hand shot Green ; second, that he was present aiding and abetting the other named persons in killing Green, and third, that he entered into a conspiracy with those persons to kill William Edens, and in the execution of the plot killed Green.   The confessions are most important as they relate to the first theory, and,

in short, they are as follows: The evidence of Graves is that he heard a conversation between defendant and David Walker, in which one of them asked the other why he didn't do something with that woman to stop her from trying to pull their masks off, and the other said, if she hadn't thrown up the gun with her hand, he would have stopped it. Davis testifies, that defendant said she got the mask off, or tore it loose, and in the same connection said: "By God, I put them in just about right then," that he got revenge, etc. These conversations took place after the parties left the house and on the night that Greene was killed.

Joseph Newton states that defendant told him, when they were coming from Arkansas to this state, that he got into a scuffle with Greene, that he held Green's hand until the latter fired the shots out of his pistol, that he then "fixed" Greene, and that a woman tore his cap, and he would have killed her if she had not pulled the pistol or gun to one side. Mrs. Greene testified that one of the men attempted to shoot her, but she threw up the gun, that she pulled the mask partly off the face of this man, and that her husband was at the bed where she was, when he was shot.

There can be no question but Greene was shot and killed, and that, too, by some one in the commission of murder. In short the *corpus delicti* is proved beyond question by persons having no agency in the crime. Besides this, defendant's confessions, it will be seen, are corroborated in their details by the evidence of Mrs. Greene. Under these circumstances was it incumbent upon the court to give the refused instructions?

This court has often approved and asserted the general doctrine that the naked confessions of the defendant will not justify or support a conviction; that the *corpus delicti* must be proved by evidence other than extra judicial confession. *Robinson v. State*, 12 Mo. 592; *State v. Scott*, 39 Mo. 424; *State v. German*, 54 Mo. 526; *State v. Patterson*, 73 Mo. 695. In the

case last cited, it is said : "Where a confession is made, and the circumstances therein related correspond in some points with those proved to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused." In the cases before cited, there was either no extraneous evidence that the crime had been committed, or the rule was considered in its application to a demurrer to the state's evidence, or on a consideration of the objection that the evidence did not support the conviction. In the recent case of *State v. Brooks*, 92 Mo. 542, we declined to reverse a judgment where no instruction on the subject had been given, none having been asked by the defendant. And in the prior case of *State v. Lamb*, 28 Mo. 218, the court speaks of the rule as an abstraction, because, it is said, a case will rarely arise for its application. In the case of *Young v. State*, 68 Ala. 570, which was an indictment for murder, the court refused, on the request of defendant, to charge the jury that "the mere fact that a prisoner has made a confession is not sufficient to authorize a conviction." It was held there was no error in refusing to give the charge. "When," says the court, "as in the present case, there is full evidence of the *corpus delicti*, independent of the confession of the prisoner, a confession of his criminal agency, if believed by the jury, will authorize a conviction."

It is, of course, for the court in the first instance to say whether there is any evidence, aside from the confessions, tending to show that the crime was committed by some one, and for the jury to find the fact. There may be cases where it will be proper for the court to give special instructions upon this subject, though there is some evidence *aliunde*. But where the *corpus delicti* is fully and completely established by evidence, outside of the confessions, it is not error to refuse to instruct,

that it devolves upon the state to show by extraneous evidence that the alleged crime had been committed by some one. The prior cases in this court do not assert that such an instruction should be given in such cases; and the case of *State v. Lamb, supra*, leads to the conclusion just stated. With this conclusion, it follows that there was no error in refusing the instruction in question.

We have not overlooked these matters in proof: namely, that the witness, Joseph Newton, is a brother of one of the parties indicted in this case; that he undertook to assist the officers in finding defendant, with the assurance that it would be of service to his brother, who was used as a witness by the state; that he had himself arrested to allay suspicion while in search of defendant; and that he induced defendant by professions of friendship to leave Arkansas and come to this state. The defendant was arrested on arrival. It is broadly stated in *State v. Phelps*, 74 Mo. 128, that artifice, cunning, falsehood and deception on the part of the officers will not render the confession thus procured inadmissible; the same must be true as to this witness. His interest in securing the arrest of defendant, and the methods used, were matters for consideration by the jury in determining the credit to be given to his evidence, but these matters have nothing to do with the question just considered. Numerous other questions are made over the instructions given but we do not regard any of them as well taken, and they need not be recited in detail. The instructions given cover the entire case.

13. Objection is also made to those remarks of the prosecuting attorney, made in his opening argument, "as to what was going on in the house while he (defendant) stood on the doorstep, we are left to conjecture, so far as this defendant's testimony is concerned. He does

not tell us, nor could we ask him any questions as to matters not testified to by him in his direct examination." The statute allows the defendant to testify in his own behalf, but limits the cross-examination to matters referred to in the examination in chief. In the recent case of *State v. Graves*, 95 Mo. 510, we held that, where the defendant testified to one matter, the prosecuting officer had no right to draw inferences from the failure of defendant to speak of other and distinct matters, and about which he did not testify. The principle of that case can have no application here, for defendant testified that he was in the door of the house where Greene was killed, but in substance says he was not there for any felonious purpose. Having thus testified, as to what were not his purposes, it was competent for the state to cross-examine as to what his purposes were. Such a cross-examination would relate to matters about which he testified in chief. Having opened up this matter by his own evidence, it became the subject of observation to the jury, both as to what he said and as to what he failed to disclose on the particular subject. Whilst the prosecuting officer seems to have been mistaken as to his right to cross-examine on this subject, still his comments on the evidence were within proper bounds. The court it seems admonished him to keep within the record, but aside from this, there is nothing in the remarks to furnish any valid ground of complaint.

We see no error in the record, and the judgment is, therefore, affirmed. RAY, J., absent. SHERWOOD, J., dissents as to what is ruled in respect of the defendant's first refused instruction. The other judges concur, BARCLAY, J., not sitting.

### DISSENTING OPINION.

SHERWOOD, J.—I am called upon to say why I dissent from the conclusions reached in the foregoing opinion. These are my reasons:

I.   The instruction asked by the state and given, as to the necessity of receiving with caution the verbal admissions of defendant, was proper enough as far as it went ; but it only asserted the familiar principle with respect to all verbal admissions and the caution which should attend testimony touching their having been made. 1 Greenl. Ev., secs. 45, 97, 200. The first instruction however asked by the defendant, and refused by the court, was much broader in its scope and was different in its meaning ; it related to the admissions made by the defendant as to the *corpus delicti* and his connection therewith. These admissions, if made, were mere extra-judicial confessions and that such confessions are utterly insufficient to warrant a conviction has been repeatedly held by this court. · Upon this ground it was that the case of *Robinson v. State*, 12 Mo. 598, was reversed. Upon this *sole* ground it was that in *State v. Scott*, 39 Mo. 424, the judgment was reversed and upon this *sole* ground the judgment in the case of *State v. German*, 54 Mo. 526, was reversed. In *State v. Patterson*, 73 Mo. 695, this doctrine was distinctly recognized.

In *Robinson v. State, supra*, one of the grounds of reversal was the refusal of the court to instruct, as asked by the defendant, that an extra-judicial confession was insufficient to convict unless corroborated. And it was upon this sole ground that, though such an instruction was proper, *yet because it was not asked*, that the failure of the court to give it was sustained in *State v. Brooks*, 92 Mo. 542. There is therefore no foundation for the assertion made in the majority opinion that "the prior cases in this court do not assert that such an instruction should be given in such cases." So that it will readily be seen that if *Robinson's case* still stands for law, and if *Brooks' case* still stands for law the foregoing opinion is not law, neither indeed can be. In *Brooks' case*, the judgment was affirmed *because of the failure to ask*

the proper instruction on the point in question, but the *propriety* of the instruction was conceded. Here not only is the *propriety* of the instruction *denied*, but the judgment is affirmed notwithstanding the failure to give what is conceded in *Brooks'* *case* and in *Robinson's case* to be a correct instruction. Does the present case overrule these cases? If not, why not?

In the majority opinion it is gravely asserted: "But where the *corpus delicti* is fully and completely. *established by the evidence*, outside of the confessions, it is not error to refuse to instruct that it devolves upon the state to show, by extraneous evidence that the alleged crime had been committed by some one." The condemnation of the doctrine thus declared has been sufficiently shown by the cases cited; but let us look at it apart from precedent and the same result is inevitable. The argument is that *if the evidence is amply sufficient the propriety of refusing instructions based thereon thereby becomes immaterial.* With equal propriety an appellate court might gravely say that because the evidence respecting a homicide is confessedly sufficient to show circumstances of deliberation, premeditation and malice aforethought, *that, therefore*, an instruction defining those terms was unnecessary. In short, this court places itself on record as, in effect, declaring that if the evidence on a disputed fact is *full and complete*, strong and convincing, *this does away with any necessity for an instruction based upon such fact.* Accustomed as are the members of the legal profession of this state to surprises from this court in its enunciation of new rules and principles of criminal law, they will doubtless be startled by this, its latest utterance.

The case of *State v. Lamb*, 28 Mo. 218 has been cited as upholding the view that the distinction to be taken between judicial and extra-judicial confessions was a mere abstraction because a case will rarely arise for its application. However, this may be, there have

arisen in this court *three cases* already where the distinction was maintained by this court, and the judgment of the lower courts reversed because of their failure to maintain it. *Lamb's case* has been severely and justly criticised by the text writers as inconsistent with fundamental principles in that it does give recognition to the broad difference between the probative effect of the different kinds of confessions. But in that case, the remark made was made *arguendo*, and in *one sense* the difference between the two kinds of confessions was an abstraction ; that is, so far as the sufficiency of the evidence to support a conviction was concerned as there was abundant evidence to make up for any probative deficiency in the extra-judicial confessions therein. And that case *does not discuss* the point as to the propriety of refusing an instruction relative to the force and effect to be given to such confessions, and if it did, and stated anything contrary of what has been already asserted, it would be met and refuted by *Robinson's case* and *Brooks' case, supra.*

II. Again, the point insisted upon by the defendant *was not* that confessions obtained by artifice, cunning, falsehood and deception on the part of those obtaining them, would render such confessions *inadmissible*, as is assumed in the majority opinion ; but the point was made, and distinctly made, that the position of the witness Joseph Newton, who testified to the alleged confession, was tantamount to that of an accomplice to this extent at least, that a *cautionary instruction* should have been given respecting the weight to be attached to his testimony. This position of the defendant is abundantly sustained by authority as I will now proceed to show : *Commonwealth v. Downing*, 4 Gray, 29 ; *Anonymous*, 17 Abb. Prac. (N. Y.) 48 ; *Preuit v. People*, 5 Neb. 377 ; *Heldt v. State*, 20 Neb. 492, reported in 9 Crim. Law Mag. 248 ; Wharton's Crim. Ev., sec. 440.

In *Commonwealth v. Downing, supra*, the witness, King, purchased intoxicating liquor sold contrary to law

for the express purpose of convicting the seller, and while the court held that this did not make him an accomplice and thus render his testimony inadmissible, yet the court used this language: "We think he (meaning the trial judge) might well have instructed the jury that such testimony was to be received with the greatest caution."

In *Anonymous, supra,* where the witness was hired to watch and detect a wife suspected of adultery, it was held that this did not authorize the absolute rejection of such witness' testimony, but the court declared that it "ought to be received with great caution and scrupulously and minutely scrutinized."

In *Heldt v. State, supra,* the court uses this pointed language: "A man who will deliberately ingratiate himself into the confidence of another for the purpose of betraying that confidence, and, while with words of friendship upon his lips, seeks by every means in his power to obtain an admission which can be tortured into a confession of guilt, which he may blazon to the world as a means to accomplish the downfall of one for whom he professed great friendship, cannot be possessed of a very high sense of honor or of moral obligation. Hence the law looks with suspicion on the testimony of such witnesses, *and the jury should be specially instructed* that, in weighing their testimony, greater care is to be exercised than in the case of witnesses wholly disinterested."

Wharton, in his work on Criminal Evidence (9 Ed.) sec. 440, approves this doctrine.

III.     Error was committed in permitting the prosecuting attorney in his opening argument, to comment upon the failure of the defendant to testify as to what his purposes were in going to the house of Edens. He had testified that he was there for no felonious purpose. It may be conceded that it was competent for the state to have interrogated him as to what his purposes were;

but it does not thence follow that the prosecuting attorney failing in his duty properly to cross-examine the defendant, and thereby elicit the whole truth from him, could afterwards take advantage of his own wrong and impute to the defendant the fault of not answering fully when no opportunity was afforded him of doing so. Common fairness forbids resort to such a course. It must be obvious that if the statute is construed as in this instance, that the privilege which the statute is supposed to confer on a defendant to testify in his own behalf, will very frequently be converted into a trap for the unwary, and enable the prosecuting attorney to forbear to cross-examine the defendant, and then, by some covert and damaging insinuation, to do more than he could do by the most skilful cross-examination.