State v. Hunt.

THE STATE v. HUNT, *Appellant*.

Division Two, December 7, 1897.

1. **Qualifications of Jurors:** NEWSPAPER KNOWLEDGE. Four jurors answered that they had formed and expressed an opinion as to the guilt or innocence of defendant, from newspaper accounts which purported to give a detailed statement of what was supposed to be the facts in regard to the homicide, and that they, still entertained that opinion, and that it would require evidence to remove it, but they further stated that they could give defendant as fair and impartial a trial as though they had never formed an opinion or had never heard of the case. *Held*, that the court did not err in overruling defendant's challenges to these jurors. (*Distinguishing State v. Culler*, 82 Mo. 623, and *State v. Taylor*, 134 Mo. 149.)

2. ———: JUROR IMPANELED BY WRONG NAME. Armistead Selby, who had qualified as a juror, appeared on the list of forty accepted jurors as "Armistead Delly," and this mistake in name was not discovered by defendant until within two hours of the time when he was required to pass upon the panel and enter upon his trial, and as soon as the mistake was discovered Selby's name on the list was substituted for Delly's by the court in the absence of defendant. No person named "Delly" was on the panel. *Held*, that Selby, being actually and corporally present and having qualified in the presence of the defendant, no prejudicial mistake was made.

3. **Criminal Law:** INSTRUCTIONS: REASONABLE AND SATISFACTORY INFERENCE. An instruction which told the jury that the fact that the killing was done willfully, deliberately, premeditatedly, and of malice aforethought, need not be proved by direct evidence, but if it could be

satisfactorily and reasonably inferred from all the evidence, it would warrant a verdict of guilty, is cured of any possible defect it may have by two other instructions that told the jury that the burden was on the State to establish defendant's guilt beyond a reasonable doubt; nor are such instructions in conflict. .

4. Practice: MOTION FOR NEW TRIAL: AMENDMENT. An amendment to a motion for a new trial can not be made, nor can a supplemental motion be filed later than four days after verdict.

5. ———: ———: AFFIDAVIT OF ATTORNEY. A motion for a new trial on the ground that the jury is not legally constituted, alleging that some of the jurors had expressed a determination to convict the defendant after they had been placed on the panel, must be supported by the affidavit of the defendant and his counsel; that of the attorney alone is not sufficient.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

*Joe E. Cupp* and *E. M. Bass* for appellant.

(1) One who has "read the evidence taken before the coroner's jury, either as originally written, or as printed in a newspaper . . . . . . . and formed an opinion therefrom, as a matter of law is disqualified, and he can neither form one of the list of forty, nor one of the jury which tries the issue joined." *State v. Culler*, 82 Mo. 626; *State v. Taylor*, 134 Mo. 138. (2) The court erred in making its order requiring the clerk to substitute the name of Armistead Selby for that of Armistead Delly, upon the records as well as upon the list of the forty jurors as originally furnished defendant, and after the State had made its challenges, and within two hours of the time the defendant was required to return his challenges into court, and while the defendant was absent and confined in jail, nor was he in the court room pending the consideration thereof. *State v. Clark*, 121 Mo. 513; R. S. 1889, sec. 4191;

*State v. Smith,* 90 Mo. 37.    (3) The court erred in the instructions.   Those given were in conflict.   Those refused were proper and should have been given. *State v. Wisdom,* 119 Mo. 552; *State v. Fairlamb,* 121 Mo. 147; R. S. 1889, sec. 4208.   (4) The trial court committed reversible error in refusing to allow the defendant to file an amended ground to his motion for a new trial, or a supplemental motion for a new trial. *State v. Wyatt,* 50 Mo. 309; *State v. Taylor,* 64 Mo. 137.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The instructions given by the court on behalf of the State on the subject of murder in the first degree are almost a literal copy of those given for the State in the case of *State v. Duestrow,* 137 Mo. 44; *State v. Williamson,* 106 Mo. 162; *State v. Bryant,* 93 Mo. 273; *State v. Pagels,* 92 Mo. 300.   (2) The burden of establishing the defense of insanity in a murder trial rests on the defendant.   *State v. Schaefer,* 116 Mo. 112. (3) The instructions given, both for plaintiff and defendant, cover every legal aspect of the case warranted by the evidence.   *State v. DeMosse,* 98 Mo. 344; *State v. Foster,* 115 Mo. 448; *State v. Cantlin,* 118 Mo. 111; *State v. Paxton,* 126 Mo. 513; *State v. Nelson,* 132 Mo. 196.   (4) The jury were properly instructed upon the question of flight.   The purpose of the flight is a question for the jury and not the court.   They were so instructed.   *State v. MaFoo,* 110 Mo. 7; *State v. Potter,* 108 Mo. 424.   (5) In substituting the name of Armistead Selby for Armistead Delly no change of men was made, but simply a change in name, which could by no means work a prejudice to the defendant.   (6) No error was committed by the trial court in refusing

defendant to file his amended or supplementary motion for a new trial. R. S. 1889, sec. 4270; *State v. Brooks*, 92 Mo. 591.

BURGESS, J.—From a conviction of murder in the ·first degree for having on the twenty-ninth day of August, 1896, shot to death with a pistol his daughter Mattie Ree Hunt, defendant appeals. The homicide was committed in Boone county, where the trial was had at the November term, 1897, of the circuit court of that county.

The defense was insanity.

The facts were but few, and about as follows:

At the time of the homicide the defendant, his wife, and their daughter Mattie Ree Hunt, lived on a small piece of property of which defendant was the owner, in Columbia, Missouri. He had for some time been wanting to trade the town property for a small tract of land in the country for the purpose of moving onto it with his family, to which the wife would not consent, and over this and other disagreements they had many quarrels and bitter controversies. Defendant was given to drink and intoxication, and when under the influence of liquor the quarrels between himself and wife were the more frequent. It was shown that he had on divers occasions threatened to take the life of his wife, the deceased, and himself. Defendant had several sons, all of whom lived in the country. On the evening of August 29, 1896, defendant returned home from a visit to one of his sons in the country, and shortly thereafter began quarreling with his wife. At the time of his return his daughter, the deceased, was in town, having gone there to buy some groceries for the family, and upon her return found the defendant and her mother still quarreling, whereupon deceased said to her mother: "I would not stand

it." The defendant at once drew his pistol from his pocket and shot deceased, from the effects of which she died within three or four days next thereafter.

It was shown on the part of defendant that some seven years prior to the homicide defendant had two slight sunstrokes which affected his mind, but this evidence as to the condition of his mind was contradicted by the State.

The trial was had to a jury, selected from a panel of forty jurymen, four of whom, viz., James Gibbs, William Prather, John Ballenger, and W. H. H. Maxwell, were challenged for cause, and the name of one Armistead Selby, who was regularly sworn, found to be qualified to sit upon the trial and accepted, appeared upon the record and list of jurors furnished to the defendant as Armistead Delly, until within two hours of the time in which defendant was required to pass upon the panel and to enter upon his trial, when the court over the objection of defendant by entry of record required the clerk of the court to substitute the name of Armistead Selby for that of Armistead Delly. Each of the jurors named, except Selby, answered upon his examination touching his qualification as a juror that he had formed and expressed an opinion as to the guilt or innocence of the defendant from newspaper accounts which purported to give a detailed statement of what was supposed to be the facts in regard to the homicide, and that he still entertained that opinion, which it would require evidence to remove; but that notwithstanding such opinion he could give the defendant as fair and impartial a trial as though he had never formed an opinion or had never heard of the case. The action of the court in overruling defendant's challenges to these jurors is assigned for error, and *State v. Culler,* 82 Mo. 623, and *State v. Taylor,* 134 Mo. 149, are relied upon as sustaining that

contention, but there is a marked distinction between those cases and the one at bar.  In the *Culler* case it was held that a person who had read the evidence with respect to the homicide as originally written, or as printed in a newspaper, and formed an opinion therefrom with respect to the guilt or innocence of the person then on trial, was disqualified from serving as a juror upon the trial of such cause.  That case was followed and approved in the case of *State v. Taylor*, 134 Mo. 109.  But in the case in hand the jurors only read newspaper accounts of the homicide, and it is well settled in this State that persons who have formed opinions as to the guilt or innocence of one on trial for crime, from rumor or newspaper reports, are not for that reason disqualified to sit as jurors on the trial of the cause where they answer upon their *voir dire* as in this case, that they can give the defendant a fair and impartial trial.  *State v. Duffy*, 124 Mo. 1; *State v. Williamson*, 106 Mo. 162; *State v. Bryant*, 93 Mo. 273. There is no pretense that either of these jurors had read the evidence in the case, or that they were otherwise disqualified to sit as jurors than as herein stated. There is no merit in this contention.

Nor do we think that there is any merit in the point that the name of Armistead Delly appeared on the list of forty qualified jurors from which defendant made his challenges, and from which the panel of twelve were to be selected to try the cause instead of Armistead Selby, which was in fact the name of the juror.  In the case of the *Queen v. Mellor*, 27 L. J. Mag. Cas. 121, preparatory to the defendant being put upon his trial for murder, the name of A., a juror on the panel, was called, and B., another juror on the same panel, appeared and by mistake answered to the name of A. and was sworn as a juror.  The prisoner was convicted.  The fact that B. had answered for A.

was not discovered until after the conviction, and upon a case reserved the court said: "The mistake is not a mistake of the man, but only of his name. . . . . . . At the bottom the objection is but this, that the officer of the court, the juryman being present, called and addressed him by a wrong name. Now, it is an old and rational maxim of law, that where the party to a transaction, or the subject of a transaction, are either of them actually and corporally present, the calling of either by a wrong name is immaterial. *Praesentia corporis tollit errorem nominis.*" It was one and the same man called by a different and wrong name. The mistake was corrected by the court as soon as discovered, and the name of Selby inserted in place of Delly. Selby had shown himself to be qualified as a juror on his *voir dire*, while no such man as Delly was on the panel. It is impossible to see in what way defendant could have been prejudiced by the mistake in the name, even though he was not present when the correction was made.

But two of the instructions given on behalf of the State are criticised by defendant, the third and fifth. They are as follows:

"3. He who willfully, that is, intentionally, uses upon another, at some vital part, a deadly weapon, such as a loaded pistol, must, in the absence of qualifying facts, be presumed to know that the effect is likely to be death, and knowing this, must be presumed to intend death, which is the probable consequence of such an act, and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly and from a bad heart. If, therefore, you find and believe from the evidence in this cause that the defendant took the life of Mattie Ree Hunt by shooting her in a vital part with a pistol, with manifest designs to use such weapon upon her,

and with sufficient time to deliberate and fully form a conscious purpose to kill her, and without sufficient or just cause or provocation, then such killing is murder in the first degree. And while it devolves upon the State to prove the willfulness, deliberation, premeditation and malice aforethought, all of which are necessary to constitute murder in the first degree, yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if you can satisfactorily and reasonably infer their existence, from all the evidence, you will be warranted in finding the defendant guilty of murder in the first degree.

"5. The court instructs the jury that where there is evidence introduced as to an attempted escape by the defendant who has been charged with an offense, to avoid his arrest by the officers of the law and trial, such attempt to escape, in the absence of qualifying circumstances, raises a presumption of guilt, and if you find from the evidence in this case that the defendant did attempt to escape to avoid arrest and trial, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of the guilt or innocence of defendant."

The criticism on the third instruction is that it is in conflict with the State's sixth instruction, by which the jury are told "that the State must prove to the satisfaction of the jury beyond a reasonable doubt that the defendant committed the crime as charged in the indictment; that is, that the killing was done willfully, deliberately, premeditatedly, and of malice aforethought, while by the third instruction the jury are told that these facts need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing, and if they can satisfactorily and reasonably infer their existence, from

all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree;" that to allow these elements to be satisfactorily and reasonably inferred, is in direct conflict with the well established theory or principal that guilt as charged must be proven beyond a reasonable doubt, and that while these several elements may be inferred, from either direct or circumstantial evidence, their existence should be inferred to the satisfaction of the jury beyond a reasonable doubt, and not to their reasonable satisfaction.

This instruction was passed without criticism by this court in *State v. Duestrow*, 134 Mo. 44, and when read in connection with the sixth given on behalf of the State and the first given upon behalf of the defendant, in which the jury are told that the burden rests upon the State to show defendant's guilt beyond a reasonable doubt, and if it had failed to do so they must acquit, no substantial objection can be urged against it.   By the State's sixth, and defendant's first instruction, he was given the benefit of any reasonable doubt as to his guilt from all the evidence adduced upon the trial which relieved the State's third instruction of any possible objection that could be urged against it.

The State's fifth instruction is challenged upon the ground that there was no evidence upon which to predicate it.   On the night after the shooting defendant left home, and the next morning a searching party that had been organized after his departure to hunt for him, after searching for him several hours that night, found no trace of him until about 3 o'clock the next morning, when they found the horse which he had ridden standing in the road with the saddle on, and bridle off, about seven miles north of Columbia.   The horse had been hitched to the fence but had slipped the bridle.   Defendant was not found until the follow-

ing Monday morning, when he returned home, where he was shortly thereafter arrested. He had remained Sunday night at his son-in-law's some miles in the country. These facts, without some explanation on the part of defendant, were, we think, sufficient to justify the instruction, especially when the killing was in effect admitted by the plea of insanity and no other justification or excuse was offered therefor. It could not in any event have possibly been hurtful to the defendant under the circumstances.

We are unable to see wherein the court failed to instruct upon all questions of law involved in the case which were necessary for the information of the jury in giving their verdict, nor has it been suggested by counsel for defendant wherein it failed to so do. On the other hand, the instructions given are clear and explicit, and covered every phase of the case.

Within four days after the rendition of the verdict of the jury in this cause, to wit, February 12, 1897, defendant filed his motion to set aside the verdict and for a new trial, and before the same was disposed of, but more than four days after the verdict, to wit, February 18, 1897, defendant filed and asked the court to allow an additional or amended ground for a new trial, the following, to wit:

"17. Because the panel of forty men from which the jury was selected, and the final jury selected in the case and before whom the same was tried, were not legally constituted in this, that at least one of those who were sworn to try said cause was biased and prejudiced against this defendant, and had expressed his opinion after he had been selected as one of the panel of forty, and prior to his selection as one of the trial jurors; and said juror wholly failed to disclose upon his *voir dire* examination that he was so biased and prejudiced against the defendant as aforesaid."

"Joe H. Cupp, attorney for defendant, John Hunt, Sr., upon his oath, says that since the trial and verdict and the filing of the motion for a new trial in this cause, to wit, about 10 o'clock A. M. of the eighteenth of February, 1897, he was creditably informed of the facts stated in the seventeenth exception set out as above, and he verily believes the statements therein to be true, and if granted the power of the court, by subpoena and oral examination in open court, he can establish the facts by three or more competent witnesses who will testify in substance that the juror stated to them and in their presence that 'If he and one other of the panel of forty were left on the trial jury, old man Hunt would stand a damned bad show; that he was guilty as hell and ought to have his damned neck broke. Affiant further states that he can not produce the said affidavits of said witnesses to the above fact because said witnesses, Luther Maupin, LaFayette Hume, Sr., William Hunt, and Paul Venable refuse to give their voluntary affidavits to the foregoing facts. Wherefore affiant prays the court to allow the amendment as above and that the process of the court be given to establish the facts herein set forth."

Which said amendment the court refused on the eighteenth day of February, 1897, to which ruling and order of the court the defendant then and there excepted at the time.

Thereupon the defendant offered and asked the court to allow him to file said amended ground "No. 17 and the accompanying affidavit" as an independent or supplemental motion for a new trial in said cause; which motion and offer the court refused and overruled; to which refusal and order of the court the defendant then and there excepted at the time.

The contention is that the court committed error in refusing to allow defendant to amend his motion for

a new trial, by alleging an additional cause therefor, or by filing a supplemental motion assigning the same cause.   Section 4270, Revised Statutes 1889, is as follows:   "A motion for a new trial shall be in writing, and must set forth the grounds or causes therefor, and be filed before judgment and within four days after the return of the verdict or finding of the court, and shall be heard and determined in the same manner as motions for new trial in civil cases."   The time prescribed by statute in which a motion for new trial must be filed is within four days after verdict, and leaves no discretion to the court in that regard.   It is mandatory, not directory.   *Maloney v. Railroad,* 122 Mo. 106; *St. Joseph v. Robison,* 125 Mo. 1;   *Allen v. Brown,* 5 Mo. 323; *Welsh v. St. Louis,* 73 Mo. 71;   *Bank v. Bennett,* 138 Mo. 494.   And it was held in *State ex rel. v. Walls,* 113 Mo. 42, and *State v. Dusenberry,* 112 Mo. 277, that a motion for a new trial could not be amended or a supplemental motion filed after the expiration of four days after verdict.   If a motion for a new trial can be amended, or a supplemental motion filed after the expiration of four days after trial, then for the same reason it can be done any number of days thereafter, which is contrary to the plain letter of the statute. This point is also untenable.

Moreover, the motion for a new trial upon the ground suggested in the proposed amendment, and in the supplemental motion, was not supported by the affidavit of the defendant, which was absolutely essential.   It must have been supported by both the affidavit of the defendant and his counsel; nothing less will answer the behests of the law.   *State v. Howard,* 118 Mo. 127; *State v. Burns,* 85 Mo. 47.

Finding no error in the record, we affirm the judgment, and direct the sentence announced to be executed. GANTT, P. J., and SHERWOOD, J., concur.