THE STATE OF IOWA V. CLAUDE J. POE, ROBERT DECKER AND HARRY MILLER, Appellants.

**Robbery:** INDICTMENT: AGGRAVATING CIRCUMSTANCES. Where an in-
1 dictment for robbery states the essential facts of the crime, it is not necessary for it to further allege the circumstances of aggravation to warrant the imposition of the penalty provided in Code, section 4754.

**Flight:** EFFECT AS EVIDENCE OF GUILT: INSTRUCTIONS. Flight is not
2 presumptive evidence of guilt, but is a circumstance to be considered by the jury in connection with all the other evidence in arriving at the guilt or innocence of the defendant.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, FEBRUARY 16, 1904.

DEFENDANTS were put on trial under an indictment charging them with robbery committed while being armed with dangerous weapons, and, on conviction, each was sentenced to imprisonment in the penitentiary for ten years, and they jointly appeal.—*Reversed.*

*Stivers & Slaymaker* and *J. S. Banker* for appellants.

*C. W. Mullan,* Attorney General for the State.

MCCLAIN, J.—The indictment charged that defendants made an assault upon one Charles Billington and put him in bodily fear and danger of his life, and that said defend-
1. INDICTMENT: aggravating circumstances. ants, being then and there armed with a revolver and a knife, the same being dangerous weapons, feloniously and unlawfully did rob, steal, and carry away from the person of said Billington, against his will, certain property described. The court charged the jury that if it found the defendants, or either of them, was armed with

a revolver and knife, or either of such weapons, with intent, if resisted, to kill or maim the said Charles Billington, or if the defendants, or either of them, being so armed, struck or wounded the said Charles Billington, then the defendants, or either of them, so found guilty, might be punished as specified in Code, section 4754, which provides that "if such offender at the time of such robbery is armed with a dangerous weapon with intent if resisted, to kill or main the person robbed, or if being so armed, he wound or strike the person robbed," he may be punished by a term of imprisonment in the penitentiary not exceeding twenty years nor less than ten years.

This instruction is objected to on the ground that the indictment does not charge the aggravated degree of the offense described in the section of the Code above referred to, and it is contended that it was error to submit to the jury the question whether defendants were armed with intent, etc., or did, being so armed, wound or strike the person robbed. But it is to be noticed that the statute does not describe different offenses in the nature of robbery. In Code, section 4753, the crime is fully described, without reference to the circumstances of being armed, etc., while the two following sections prescribe punishments, depending on the presence or absence of the aggravating circumstances under which the crime is shown to have been committed. Therefore it was not necessary in the indictment to charge the circumstances of aggravation, which affect only the measure of punishment that may be inflicted. This conclusion has been reached in Massachusetts, where the statutory provisions are very similar to those found in our Code. *Commonwealth v. Mowry,* 11 Allen, 20; *Commonwealth v. Cody,* 165 Mass. 133 (42 N. E. Rep. 575).

Although this court may not have expressly passed on the question, yet in *State v. Brewer,* 53 Iowa, 735, it approved an indictment similar to the one now before us, while in *State v. Callihan,* 96 Iowa, 304, and in *State v. Osborne,* 96 Iowa, 281, it treated an indictment charging the essen·

tial facts of robbery, and also an assault with intent to kill, as not describing more than one offense, and deemed the peculiarities of the assault as unnecessary and surplusage. We think it not required that an indictment which states the essential facts of the crime of robbery shall further state the circumstances of aggravation, in order to warrant the imposition of the penalty provided for in Code, section 4754.

In one paragraph of the charge, the jury was instructed as follows: "It is claimed by the state that the defendants Decker and Poe at once fled, and endeavored to escape arrest by such flight. If you find said defendants at once after the alleged offense fled to Missouri, and endeavored to avoid arrest and prosecution by such flight, such fact would be presumptive evidence of guilt; and if, such fact is unexplained, the jury would be justified in considering such flight as evidence of guilt." The objection urged to this instruction is that the jury may have reasonably understood it as authorizing them to give undue weight to the fact of flight, and to convict on proof of that fact alone.

2. FLIGHT: effect as evidence of guilt: instruction.

The fact that defendant fled from the vicinity where the crime was committed, having knowledge that he was likely to be arrested for the crime, or charged with its commission, or suspected of guilt in connection therewith, may be shown as a circumstance tending to indicate guilt, and may be considered by the jury with other circumstances tending to connect the defendant with the commission of the crime, to authorize the inference of the guilt of defendant, the *corpus delicti* being proven. To this proposition there is general assent among the authorities, and it is well settled that evidence of flight is admissible. 1 Bishop's New Criminal Procedure, section 1250; Abbott's Trial Brief, 458. The admissibility of such evidence depends upon the assumption—which is in accordance with usual human experience—that a guilty person will, and an innocent person will not, attempt to avoid an investigation of a charge of crime; and yet it is well

recognized as a fact that guilty persons do not univers-
ally attempt to escape; for, recognizing the danger of
such attempt, or relying on the inability of the prose-
cution to connect them with the crime charged, they may well
think it to be to their advantage to defy suspicions or accusa-
tions; while, on the other hand, innocent persons, through
mere timidity, or by reason of a fear that they may not be
able to meet apparent evidence of guilt, may seek to elude
arrest for the purpose of escaping or postponing investiga-
tion until the excitement has subsided, or facts establishing
their innocence may have been developed.    It is therefore
usual and proper, not only to instruct the jury that they may
consider evidence of flight with other circumstances tending
to show defendant's guilt, but also to advise them as to the
weight which should be given to such evidence.    *Com-
monwealth v. Berchine,* 168 Pa. 603 (32 Atl. Rep.
109); *Elmore v. State,* 98 Ala. 12 (13 South. Rep. 427);
*Sewell v. State,* 76 Ga. 836.

In *State v. Thomas,* 58 Kan. Sup. 805 (51 Pac. Rep.
228), the court approved an instruction that flight of defend-
ant is "a circumstance to be considered, in connection with all
the other evidence, to aid you in determining the question of
his guilt or innocence."    The weight of such circumstances
is frequently greatly modified by the conditions shown to
have existed as bearing upon the conduct of the defendant;
and under some circumstances, such as that the de-
fendant was of immature years or thought himself to be in
danger of violence, such evidence is of very little probative
force.    *Mathews v. State,* 19 Neb. 330 (27 N. W. Rep.
234); *Ryan v. People,* 79 N. Y. 593.

In the case last cited the court says: "The evidence that
the defendants made an effort to keep out of the way of the
officer was very slight, if any, indication of guilt.    There are
so many reasons for such conduct, consistent with innocence,
that it scarcely comes up to the standard of evidence tending
to establish guilt; but this and similar evidence has been al-

lowed upon the theory that the jury will give it such weight as it deserves, depending upon the surrounding circumstances." And in *Sheffield v. State,* 43 Tc   378, this language is used: "It was a maxim of the ancient common law that flight from justice was equivalent to guilt. This effect is not now given to flight in the modern law of evidence. Numerous examples are to be found in which some other motive can be assigned than that of guilt, and which form exceptions to the general rule, and require consideration by the jury in coming to a conclusion as to the real motive for flight." It is clear that the circumstance of flight alone will not justify conviction of the defendant, in the absence of other evidence tending to connect him with the commission of the crime, although the *corpus delicti* may have been sufficiently shown. *Elmore v. State,* 98 Ala. 12 (13 South. Rep. 427); *Sylvester v. State,* 71 Ala. 17.

Indeed, it has been held that the court should not say to the jury, in such cases, that flight is evidence of guilt, but, rather, that it is only evidence tending to prove guilt, and accordingly it is said that the court should not instruct the jury that if flight is proved it must be satisfactorily explained, consistently with the innocence of the defendant. *Fox v. People,* 95 Ill. 71.

The last sentence of the instruction above quoted is open to criticism, therefore, in that it might have been reasonably interpreted by the jury as authorizing them to convict the defendant of the crime charged, without other evidence ot defendant's guilt than that he had, soon after the commission of the crime, and with knowledge that he was suspected thereof, fled from the vicinity where the crime was committed. The instruction does incorporate the thought that such circumstance might be explained, but it leaves the jury to infer that, if unexplained, it is sufficient evidence to warrant them in finding that defendant was guilty of the crime. Even if unexplained, such conduct is not, as already pointed out, inconsistent with innocence, but merely a circumstance

from which, with other circumstances, the inference of guilt
may be drawn.   This sentence cannot, perhaps, be said to be
in itself erroneous as stating a proposition of law; but as the
instruction, as quoted, embodies all that was said to the jury
on the subject, and in view of the equivocal nature of the
evidence relating to the flight, as it will be hereafter more
fully referred to, we think that it was calculated to mislead
the jury as to the effect which might be given to such
evidence.

But we think that the second sentence of the instruction,
declaring that flight, if to avoid arrest and prosecution,
would be presumptive evidence of guilt, was erroneous and
prejudicial.   It is sometimes said, for the purpose of explain-
ing why evidence of flight is admissible at all, and not for
the purpose of determining what weight the jury should
give to such evidence, that a presumption of guilt arises there-
from.   Dr. Wharton, in an article on Presumptions in Crim-
inal Cases (1 Criminal Law Magazine, 10), uses this lang-
uage:   "All evidence, therefore, we conclude, consists of
reason and fact co-operating as co-ordinate factors.   The
facts are presented to us either by inspection, or by what we
call judicial notice, or by our knowledge of everyday life,
such as is embraced by the term 'notoriety,' or by the descrip-
tive narrative of witnesses.   From these facts we draw cer-
tain conclusions.   The mode by which we draw them is in-
duction, and the processes we term 'presumption.'   In other
words, a presumption is an inference of a fact from a fact.
Of this we may take the following illustration:   A man ac
cused of crime hides himself and then absconds.   From this
fact of absconding we infer the fact of guilt.   This is a pre-
sumption of fact, or an argument of a fact from a fact."
But in his work on Criminal Evidence (section 750), this
author explains the whole matter in language so pertinent
to all the phases of this case that we venture to quote him
at length:   "When a suspected person attempts to escape or
evade a threatened prosecution, it may be argued that he does

so from a consciousness of guilt; and though this inference is by no means strong enough by itself to warrant a conviction, yet it may become one of a series of circumstances from which guilt may be inferred. Hence it is admissible for the prosecution to show that the prisoner advised an accomplice to break jail and escape, or that he offered to bribe one of his guards, or that he killed an officer of justice when making such attempt, or that he attempted to bribe or intimidate witnesses. So with flight, to which no proper motive can be assigned, and with acts of disguise, concealment of person, family, or goods, and similar *ex post facto* indications of a desire to evade prosecution. But it must be remembered that, while these acts are indicative of fear, they may spring from causes very different from that of conscious guilt. 'Many men are naturally of weak nerve, and, under certain circumstances, the most innocent person may deem a trial too great a risk to encounter. He may be aware that a number of suspicious, though inconclusive facts, will be adduced in evidence against him; he may feel his inability to procure legal advice to conduct his defense, or to bring witnesses from a distance to establish it; he may be assured that powerful or wealthy individuals have resolved on his ruin, or that witnesses have been suborned to bear false testimony against him; added to all this, more or less vexation must necessarily be experienced by all who are made the subject of criminal charges, which vexation it may have been the object of the party to elude by concealment, with the intention of surrendering himself into the hands of justice when the time for trial should arrive.' Best's Evidence (5th Ed.) 578. The question, it cannot be too often repeated, is simply one of inductive, probable reasoning from certain established facts. All the courts can do, when such inferences are invoked, is to say that escape, disguise, and similar acts afford, in connection with other proof, the basis from which guilt may be inferred; but this should be qualified by a general statement of the countervailing considerations incidental to a compre-

hensive view of the question. To this effect is the charge of
Abbott, J., in *Donnall's Case,* where he told the jury, that
'a person, however conscious of innocence, might not have
the courage to stand a trial; but might, although innocent,
think it necessary to consult his safety by flight.' So it is
proper to keep in mind, as we have seen, the character of
the tribunal before whom, and the mode of criminal pro-
cedure in the country where, the trial is to take place. Hence
is it that conduct exhibiting indications of guilt should not be
received by the court, unless there be satisfactory evidence
that a crime has been committed. And in all cases the cir-
cumstances explaining or excusing flight are to be taken into
consideration."

In the same sense Best, in his work on Evidence, refers
to the effect of such evidence (Chamberlaine's Ed. 1893):
"The evasion of justice seems now nearly, if not altogether,
reduced to its true place in the administration of criminal
law; namely, that of a circumstance, a fact which it is al-
ways of importance to take into consideration, and which,
combined with others, may supply the most satisfactory
proof of guilt, although, like any other piece of presumptive
evidence, it is equally absurd and dangerous to invest with
infallibility."

Judge Thompson, in his work on Trials (volume II, sec-
tion 2543), explains the matter thus: "It is often inaccur-
ately said that the flight of the accused creates a presump-
tion of his guilt, and this presumption is sometimes inad-
vertently dealt with as though it were a presumption of law.
But it belongs to that class of presumptions which are gen-
erally classified as 'presumptions of fact.' If it were a pre-
sumption of law, the jury would be bound to draw it in every
case of flight, and the court might so instruct them; whereas
it is merely a circumstance tending to increase the probabil-
ity of the defendant being the guilty person, which, on sound
principle, is to be weighed by the jury like any other eviden-
tiary circumstance. In cases where the evidence renders it

proper, the judge is at liberty to give the jury advice touching the nature of this presumption. The following, approved in a recent case, will, with some correction of phraseology, be a good model: 'The flight of a person immediately after the commission of a crime, or after a crime is committed with which he is charged, is a circumstance in establishing his guilt, not sufficient of itself to establish his guilt, but a circumstance which the jury may consider in determining the probabilities for or against him—the probability of his guilt or innocence. The weight to which that circumstance is entitled is a matter for the jury to determine, in connection with all the facts called out in the case.' *McClain v. State,* 18 Neb. 154, 158 (24 N. W. Rep. 720). The following, from another recent case, is more concise, and perhaps better: 'Evidence has been introduced as to an attempted escape from jail, by the defendant, while in the custody of the sheriff of this county on this charge. If you find from the evidence that defendant did thus attempt to escape from custody, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of his guilt or innocence.' Approved in *Anderson v. State,* 104 Ind. 467, 472 (4 N. E. Rep. 63, 5 N. E. Rep. 711)." He then refers to the peculiar form of instruction which has been approved in Missouri, and to which we will hereafter revert. In *Murrell v. State,* 46 Ala. 89 (7 Am. Rep. 592) the court, reviewing the action of the trial court in admitting evidence of escape pending trial, speaks of flight as one of the most common grounds for a presumption of guilt.

But in respect to all these references to evidence of flight as raising a presumption of guilt, it is to be observed that it is one thing to say, in giving a legal reason for the admissibility of evidence of flight, that guilt may be presumed therefrom, and quite another thing to tell the jury that a presumption of guilt arises from such evidence. To prevent such an instruction being misleading, it would be necessary to go into

refined legal distinctions as to presumptions of fact, presumptions of law, and mixed presumptions of fact and law, which are intelligible, if at all, only to a mind trained in legal conceptions and the use of technical language.

The error involved in directing the jury that evidence of flight gives rise to a presumption of guilt is clearly pointed out in the cases on the subject. In *People v. Wong Ah Ngow,* 54 Cal. 151 (35 Am. Rep. 69), such an instruction is condemned. In *Hickory v. United States,* 160 U. S. 408 (16 Sup. Ct. Rep. 327, 40 L. Ed. 474), the subject is fully considered, and an instruction is condemned which is characterized as "tantamount to saying to the jury that flight created a legal presumption of guilt so strong and so conclusive that it was the duty of the jury to act on it as an axiomatic truth," and the court continues as follows: "In this charge, also, it is true, the charge thus given was apparently afterwards qualified by the statement that the jury had a right to take the fact of flight into consideration, but these words did not correct the illegal charge already given. Indeed, taking the instruction that flight created a legal presumption of guilt, with the qualifying words subsequently used, they were both equivalent to saying to the jury that they were, in considering the facts, to give them the weight which, as a matter of law, the court declared they were entitled to have; that is, as creating a legal presumption so well settled as to amount, virtually, to a conclusive proof of guilt." In *Alberty v. United States,* 162 U. S. 499 (16 Sup. Ct. Rep. 864, 40 L. Ed. 1051), the court approves what was said in the case from which we have just quoted, and, with reference to a similar charge, says: "The criticism to be made on this charge is that it lays too much stress upon the fact of flight, and allows the jury to infer that this fact alone is sufficient to create a presumption of guilt. It certainly would not be contended, as a universal rule, that the fact that a person who chances to be present on the scene of a murder shortly thereafter left the city would, in the ab-

sence of other testimony, be sufficient in itself to justify his conviction of the murder."

The only cases which we have been able to find sanctioning instructions to the jury that flight is presumptive evidence of guilt are those in Missouri, as to which Judge Thompson says (2 Thompson on Trials, section 2543, *supra*): "Often in Missouri, where the English idea concerning presumptions in criminal cases generally prevails, the following form of instruction upon this subject is used—ending, it is perceived, in submitting the fact as a circumstance to the consideration of the jury—'The court instructs the jury that flight raises the presumption of guilt, and if you believe from the evidence that the defendant, after having shot and killed Minnick, as charged in the indictment, fled the country and tried to avoid arrest and trial, you may take that fact into consideration in determining his guilt or innocence.'" Such an instruction is sanctioned by the following among many cases in that state: *State v. Walker,* 98 Mo., 95 (9 S. W. Rep. 646); *State v. Ma Foo,* 110 Mo., 7 (19 S. W. Rep. 222, 33 Am. St. Rep. 414); *State v. Hunt,* 141 Mo., 626-633 (43 S. W. Rep. 389). The rule in Missouri seems to be peculiar, and we are not inclined to follow it.

On principal and authority, the instruction as to the presumption to be drawn from proof of flight is erroneous, and should not be sustained, unless it is so far sanctioned in the cases in our own state that we are precluded from following the dictates of reason as illustrated by the weight of authority. In *State v. Rodman,* 62 Iowa, 456, and *State v. Fitzgerald,* 63 Iowa, 268, we approved instructions to the effect that evidence of flight, or attempt to escape, should be considered as tending to establish guilt. In *State v. Schaffer,* 70 Iowa, 371, and *State v. Stevens,* 67 Iowa, 557, we held that evidence of flight was properly introduced, and that the the fact of flight was material. In *State v. Seymour,* 94 Iowa, 699, an instruction was approved which told the jury

that if they found from the evidence that defendant, upon
being informed that he was suspected of or charged with
crime, "fled to avoid arrest, and remained away, going under
an assumed name, such fact is a circumstance which *prima
facie* is indicative of guilt." In *State v. James*, 45 Iowa,
412, a similar instruction is quoted, but without discussion
of its correctness as a proposition of law, the only question
considered being as to whether there was sufficient evidence
of flight to warrant the submission of the question to the
jury. In *State v. Arthur*, 23 Iowa, 430, an instruction is
condemned which told the jury that a mere attempt to escape
raised in law a strong presumption of guilt. In the last
cited case the court says: "That an unexplained attempt to
escape is a circumstance against a party accused of crime is
undoubtedly true, and as such it may be proven to and con-
sidered by the jury. But at most it only raises a presump-
tion—a presumption ordinarily inconclusive rather than
strong, and one which is variable in force, dependent upon
the circumstances surrounding the prisoner. * * * The
true course is to allow the fact of evading or attempting to
evade justice to be proved to the jury as a circumstance
which *prima facie* is indicative of guilt." But these authori-
ties are far from sufficient to justify the instruction given
in this case. To say that flight is a circumstance *prima facie*
indicative of guilt is a very different thing than saying that
"such fact would be presumptive evidence of guilt."

Although the term "presumptive evidence of guilt," as
applied to a certain state of facts, may, perhaps, sometimes
indicate no more than that the facts referred to may be consid-
ered by the jury as evidence from which guilt may be inferred
as a matter of fact, and not as a matter of law, yet it is al-
ways unwise, in giving the jury instructions as to the evi-
dence, to say that from any particular fact a presumption of
guilt arises. The question of guilt is one to be determined
by the jury on all the facts. In *State v. Brady*, 121 Iowa,

561, the court, referring to an instruction as to evidence of recent possession in a prosecution for burglary, says: "The law does not attach a 'presumption of guilt' to any given circumstances, nor does it require the accused to 'overcome the presumption thereby raised' in order to be entitled to an acquittal. What the law does say is that the fact of possession is evidence of guilt upon which a conviction may properly be returned, unless the other facts or circumstances developed be such that, notwithstanding the recent possession, the jury still entertains a reasonable doubt of the defendant's participation in the crime. It is in this sense the words 'presumption' and *prima facie* evidence' must be understood when employed in this connection." It is evident that the presumption arising from the recent unexplained possession of stolen property, that the person thus found in possession is guilty of larceny or burglary, as the case may be, is entitled to greater weight than the presumption of guilt from flight.

The prejudicial and misleading character of the instruction given in this case is manifest when it is considered in connection with the evidence which we find in the record. So far as appears, the only evidence of flight was that one of the defendants, who was still in the neighborhood where the crime was committed, two days after the commission of the crime, said that he was charged with having killed and robbed a man, and that "they were after him for it," and he would get away if he could; that some time afterwards—how long does not appear—he was in a town in an adjoining county, and that two months afterwards all the defendants were under arrest for this crime in Missouri. Defendants were roving characters, going from place to place and getting work of a temporary nature, and there was no reason disclosed why it should be expected that they would remain in the place where they were boarding, near the scene of the robbery, as they had no permanent employment at that place. Now, for the court to say that if it was proven that these

two defendants, soon after the commission of this crime, left the place where they had been staying as boarders, and two months afterwards were found in Missouri, they might be convicted of the crime charged, without any further evidence whatever of their connection with the offense, was manifestly erroneous; and this is exactly what the jury were told. As a matter of fact, there was other evidence of their guilt, although the testimony of the witnesses was conflicting; but the jury would have been warranted under this instruction in finding them guilty on the evidence of flight alone, ambigous as it was, although the jury did not believe that the other evidence even tended to connect them with the crime.

For error in giving the instruction above referred to, a new trial must be ordered.—REVERSED.

DEEMER, C. J. (dissenting).—The instruction which the majority condemn reads as follows: "If you find said defendants at once, after the alleged offense, fled to Missouri, and endeavored to avoid arrest and prosecution by such flight, such fact would be presumptive evidence of guilt, and, if such fact is unexplained, the jury would be justified in considering such flight as evidence of guilt."

The use of the word "presumptive" is said to be fatal to the instruction. I do not think so. It is agreed that flight is evidence of guilt, but the majority say that it is not presumptive evidence. If it is not, I should hardly know what qualifying term to use in order to express the thought. What does this adjective mean? The Century Dictionary says: "Based on presumption or probability; probable; grounded on probable evidence; proving circumstantially, not directly." Is flight, then, evidence based upon presumption or probability? Does it tend circumstantially to prove guilt? The authorities cited by the majority answer these questions in the affirmative, as I understand them. What is a presumption of fact in criminal jurisprudence? Wharton, in his work on Criminal Evidence, says, "It is a logical argument from a fact to

a fact. * * * It is an argument which infers a fact, otherwise doubtful, from a fact which is proved." Section 707 (9th Ed.) Lawson says, "It is an act of reasoning, and much of human knowledge on all subjects is derived from that source." Presumptive Evidence (2d Ed.) 640. Bouvier says: "It is an inference drawn by a process of probable reasoning from some one or more matters of fact." See, also, Best on Presumptions, section 12; and also *State v. Mecum,* 95 Iowa, 433.

It is of course a disputable presumption, and one to be drawn generally by the jury. The question then is, does an inference of guilt arise from evidence of flight under the facts assumed in the instructions? I think the authorities are practically agreed on this proposition. It will be noticed that the court does not indicate in any manner how strong that inference is; the instruction leaves the whole matter to the jury, simply saying that evidence of flight, if unexplained, may be considered by them as evidence of guilt. After all, the whole matter is left to the jury. If a jury is not justified in considering unexplained flight, under the circumstances pointed out in the instruction as evidence of guilt, then such evidence is inadmissible for any purpose. This is all the instruction warrants it in doing; and, if it does not announce the law, then I have read the books to no purpose. There is nothing in the instruction which, even inferentially, asserts that the jury might convict on evidence of flight alone. The court characterizes it as a certain kind of evidence, and then says that the jury may consider it as evidence of guilt, that is to say, as evidence tending to show guilt. Its characterization of the evidence as "presumptive" rather than "direct" has support in all the authorities. It is of the same character as possession of property recently stolen; or identity of names in identifying persons; or the presumption that one intends the natural and probable consequences of his acts, or that he intended to do that which he did; or the inference of guilt from the fabrication or falsi-

fication of testimony; or the presumption against suicide due to love of life, or to the presumption of sanity—each and all are presumptions of more or less weight. That is to say, they are inferences of a fact from a fact. "The mode by which we draw them is inductive, and the process we term a 'presumption.' " For example, we know that men who commit crime flee to avoid arrest. A crime is committed; A. knows that he is suspected of that offense, and he leaves the country to avoid arrest and prosecution. His flight is presumptive evidence of his guilt; that is, we are justified in arguing from the facts that he is guilty, else he would not have attempted to escape. This is purely a presumption of fact; and, as said by Lawson in his work on Presumptive Evidence, "If no fact could be thus ascertained by inference in a court of law, very few offenders could be brought to punishment." A presumption of fact is an act of reasoning pure and simple, and very much of human knowledge is derived from that source. Take away the inductive method of reasoning, and you so fetter the human mind as to block all intellectual progress.

Having characterized evidence of flight, that is, having given it a name, the trial court proceeded to say that such evidence, if unexplained, might be considered by the jury as evidence of guilt. Mark the words "such flight may be considered as evidence of guilt." What fault is there in this? The authorities are united in holding that this is the correct rule. I am not prepared to say that because the court characterized the evidence as "presumptive" it committed an error, especially where, as in this case, it says that the jury is simply justified in considering such flight as evidence of guilt.

I shall not undertake a review the authorities cited by the majority. Having read them all very carefully, I feel justified in saying that not one condemns such an instruction as was here given. The criticism I have of the opinion is that it does not distinguish between presumptions of guilt,

and presumptive evidence of guilt. The California cases make this point clear. Of course, no presumption of guilt arises from evidence of flight, but unexplained evidence of flight to avoid arrest and prosecution is evidence of guilt. If not, such evidence should not be admitted at all. This is all the trial court said in this case. True, he qualified the term "evidence" by the adjective "presumptive," but this was entirely proper, for by all the authorities it is presump- tive rather than direct evidence. The distinction in the two cases is the differnce between presumptions of law and of fact. This is clearly pointed out in *People v. Wong Ah Ngow,* 54 Cal., 151 (35 Am. Rep. 69). The majority, to my mind, fail to note this distinction. The trial court nowhere says that a presumption of guilt would arise from proof of unexplained flight. Had it done so, I would not be dissenting, although even here there are many authorities which would support such an instruction. See *Plummer v. Com.,* 1 Bush, 76; *Porter v. State,* 2 Ind., 435; *Murrell v. State,* 46 Ala., 89 (7 Am. Rep. 592); *Dean v. Com.,* 4 Grat. 541; *Fanning v. State,* 14 Mo., 386; *People v. Pitcher,* 15 Mich., 397. What the court did say was that unexplained flight is presumptive evidence of guilt, and that a jury would be justified in considering such flight as evidence of guilt. This I think is the law. All the authorities, so far I have been able to examine them, hold that flight, or the escape of an accused person after the commission of a crime, is a cir- cumstance tending to show guilt—that is, is presumptive evidence of guilt— and that a jury may consider such con- duct as evidence of guilt. See cases cited by the majority. If asked to define the character of such evidence, I think nearly every lawyer would say it is presumptive.

In *State v. Seymour,* 94 Iowa, 699, we approved an in- struction to the effect that such evidence was *"prima facie* in- dicative of guilt." In other words, it was presumptive evi- dence of guilt. In *State v. Arthur,* 23 Iowa, 430, we said that such evidence is a circumstance against the defendant;

that it raised a presumption ordinarily inconclusive rather than strong, but to be proved to a jury as a circumstance which, *prima facie,* is indicative of guilt. It is akin to a confession made by a defendant. Indeed, it is an implied admission of guilt, and under our modern rules it is insufficient in itself to justify a conviction. In this respect it is like a confession. In the *Arthur Case,* quoting from Best on Evidence, we said that such evidence "is a fact which it is always important to take into consideration, and, combined with others, may supply the most satisfactory evidence of guilt, but which, like any other piece of presumptive evidence, it is equally absurd and dangerous to invest with infallibility." Note the use of the words "presumptive evidence."

In *State v. James,* 45 Iowa, 412, we said that evidence of unexplained flight is a circumstance *prima facie* indicative of guilt. In other words, it is presumptive evidence of guilt.

In *State v. Boyer,* 79 Iowa, 330, evidence of flight, with other circumstances, was held sufficient to sustain a verdict of guilty.

The rule in Alabama is well stated in *Murrell v. State,* 46 Ala. 89 (7 Am. Rep. 592), wherein it is said: "Flight, in a criminal prosecution, is one of the most common grounds for a presumption of guilt. * * * Flight is universally admitted as evidence of the guilt of the accused, although it is not conclusive."

The instruction has support in the following authorities, in addition to those already cited: *State. v. Hunt,* 141 Mo., 633 (43 S. W. Rep. 389) ; *State v. Ma Foo,* 110 Mo., 7 (19 S. W. Rep. 222, 33 Am. St. Rep. 414) ; *State v. Brooks,* 92 Mo., 584 (5 S. W. Rep. 257, 330) ; *State v. Walker,* 98 Mo., 95 (9 S. W. Rep. 651).

I should not go so far as some of these cases, for they hold that from flight a presumption of guilt arises, which must be explained by the defendant. Had the trial court

instructed that from evidence of flight a presumption of guilt would arise, which, if unexplained, would warrant a conviction, I should agree with my Brethren. But the instruction will bear no such interpretation. Flight is evidence of guilt —presumptive evidence—to be considered by a jury, and, if unexplained, may be considered as evidence of guilt. This is all that the court said in its instructions, and the charge is, to my mind, correct. Certainly it is good as far as it went, and, if the defendants had desired a more explicit charge regarding the sufficiency of such evidence to justify a conviction, they should have asked it. As they did not do so, they are in no position to complain. We have so many times announced this rule that I shall not take the time necessary to hunt up the cases.

The jury could not have been misled by the use of the word "presumptive." It was a qualifying term, and could not, as it seems to me, have been understood to relate in any manner to the burden of proof. Had it been omitted, and the instruction been that flight would be evidence of guilt, I apprehend the majority would not have condemned it. The qualifying word "presumptive," it seems to me, merely characterizes the nature and kind of evidence that it is, and the force and effect thereof is given in the next paragraph, which says that, if unexplained, the jury would be justified in considering such flight as evidence of guilt. The majority so construe the words presumptive evidence as to make them mean "presumption of guilt." They are not susceptible of this construction, and even if they were, in applying the evidence to the facts of the case, the jury were told that they were only to consider unexplained flight as evidence of guilt.

Some of the modern theorists, like Prof. Thayer, have had a great deal of trouble with the words "presumption" and "presumptive," and have displayed a great amount of learning over what is ordinarily a plain proposition. A jury does not indulge in any such refinements, and the question after all is, were the jury in this case so instructed that as reasonable men they were likely to understand that from un-

explained evidence of flight a presumption of guilt arose which it was necessary for the defendants to rebut; and that if they failed to furnish this explanation they should be convicted? I do not think the ordinary mind would so understand this instruction, and I therefore think the judgment should be affirmed. I may say, further, that there is no doubt of the defendants' guilt. Their conviction does not stand upon evidence of flight alone.

LADD, J., concurs in this dissent.